**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DEVYLLE C., [1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-01061 (GMH) |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Devylle C. brought this action seeking to reverse the final decision of the Acting

Commissioner of Social Security, Kilolo Kijakazi ("Defendant" or "the Commissioner"), denying

Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred in several respects when

determining that Plaintiff had the residual functional capacity ("RFC") to perform work at all

exertional levels, with some nonexertional limitations.  More specifically, she contends that the

ALJ's analysis fails to explain its assessment of a medical opinion from Plaintiff's treating

physician and how additional inconsistencies in the medical evidence were considered or

discounted in formulating Plaintiff's RFC.  Plaintiff seeks reversal of the Commissioner's decision

and a judgment that she is entitled to benefits or, in the alternative, remand for a new administrative

---

[1] Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Dist. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://perma.cc/N9T2-U5XG.

hearing.  The Commissioner argues that the ALJ's decision denying Plaintiff benefits should be affirmed.

Based on the parties' arguments and review of the record,[2] Plaintiff's motion for judgment of reversal is granted in part and the case is remanded to the SSA for further proceedings consistent with this opinion; Defendant's motion for judgment of affirmance is denied.

## I.   BACKGROUND

### A.   Statutory and Regulatory Framework

To be eligible for SSI benefits under the Social Security Act, the Social Security Administration must find a claimant to be "disabled," meaning that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To make that determination, an ALJ gathers evidence, holds a hearing, takes testimony, and performs the following five step, sequential inquiry of the disability claim:

Step one:  whether the claimant is engaging in "substantial gainful activity";[3]

Step two:  whether the claimant has a "severe" medically-determinable physical or mental impairment or combination of impairments;[4]

---

[2] The relevant docket entries for purposes of this Memorandum Opinion and Order are (1) the administrative record (ECF No. 7), (2) Plaintiff's motion for judgment of reversal (ECF No. 13), (3) Defendant's motion for judgment of affirmance and opposition to Plaintiff's motion for judgment of reversal (ECF No. 15), and (4) Plaintiff's opposition to Defendant's motion for judgment of affirmance and reply to Defendant's opposition to Plaintiff's motion for judgment of reversal (ECF No. 18).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[3] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit."  20 C.F.R. § 416.910; *see also* 20 C.F.R. § 404.1510 (defining "substantial gainful activity" for the purposes of Social Security disability insurance benefits ("DIB") claims).  "If [the claimant is] doing substantial gainful activity, [the Social Security Administration ("SSA")] will find that [the claimant is] not disabled."  20 C.F.R. § 416.920(a)(4)(i); *see also* 20 C.F.R. § 404.1520(a)(4)(i) (defining the step one inquiry for DIB claims).

[4] An impairment or combination of impairments is "severe" if it "significantly limit[s] a claimant's "physical or mental ability to do basic work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "seeing, hearing, [or] speaking"; "[u]nderstanding, carrying out, and remembering simple

Step three:  whether the claimant's impairment is equivalent to one of the disabling impairments listed in the appendix of the relevant regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings");

Step four:  whether, in light of the claimant's RFC, the impairment prevents the claimant from performing his or her past relevant work;[5] and

Step five:  whether the claimant, in light of his or her age, education, work experience, and RFC—i.e., the most he or she is able to do notwithstanding his or her physical and mental limitations—is unable to perform another job available in the national economy.[6]

*See* 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 404.1520 (outlining the five-step sequential inquiry for the purposes of DIB claims); *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  "An affirmative answer to question 1 or negative answers to questions 2 or 4 result in a determination of no disability.  Affirmative answers to questions 3 or 5 establish disability."  *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

The claimant bears the burden of proof at the first four steps of the evaluation.  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011).  At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can

---

instructions"; exercising judgment; "[r]esponding appropriately to supervision, co-workers[,] and usual work situations"; or "[d]ealing with changes in a routine work setting."  20 C.F.R. § 416.922; *see also* 20 C.F.R. § 404.1522 (defining a severe impairment for the purposes of DIB claims).

[5] "Past relevant work" is work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1); *see also* 20 C.F.R. § 404.1560(b)(1) (defining "past relevant work" for the purposes of DIB claims).  If the claimant can perform his or her past relevant work, a finding of "not disabled" is mandated.  20 C.F.R. § 416.920(a)(4)(iv); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (defining the step four inquiry for DIB claims).

[6] At the fifth step, the ALJ may, "[i]n the ordinary case, . . . resort[ ] to the applicable medical vocational guidelines" (also known as "the grids") to determine whether the claimant is disabled.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience."  *Rosa*, 168 F.2d at 78 (alteration in original) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996)).  However, when a claimant has additional limitations beyond those contemplated by the grids, the ALJ cannot rely on the grids alone to establish nondisability.  *Id.*  In such cases, the testimony of a vocational expert ("VE") is generally taken.  *Smith v. Bowen*, 826 F.2d 1120, 1122 (D.C. Cir. 1987).

perform.  *Id.*  In making this determination, an ALJ may call a vocational expert ("VE") to testify

at the hearing as to whether, based on the claimant's RFC, he or she can perform other work that

exists in the national economy.[7]  *Id.* at 90.

### B.    Plaintiff's Disability Claims and Procedural History

Plaintiff was born on October 26, 1991 and has a bachelor's degree in English.  ECF No.

7-2 at 23; ECF No. 7-7 at 4.  Plaintiff filed an application for both DIB and SSI benefits on June

19, 2019, claiming disability from adjustment disorder with anxiety beginning February 1, 2018.

ECF No. 7-5 at 2; ECF No. 7-6 at 50.  Although she worked after the alleged onset date, her

earnings— less than $900 in the second quarter of 2019, less than $400 in the fourth quarter of

2019, and about $750 in the fourth quarter of 2020—were all below the monthly substantial gainful

activity limit for their respective years.  ECF No. 7-2 at 19, 36; ECF No. 7-5 at 12, 27; *see also*

Social Security Administration, Program Operations Manual System, DI 10501.015, Table 2,

*available at* https://perma.cc/8GLN-N3Q7.  Plaintiff's application was denied at the initial level

of review on August 30, 2019, and upon reconsideration on January 29, 2021.  ECF No. 7-4 at 6,

16.  She thereafter requested a hearing before an ALJ on February 6, 2021.  *Id.* at 36.

At the hearing, held on June 4, 2021, the ALJ took testimony from Plaintiff and a vocational

expert.  ECF No. 7-2 at 32.  Plaintiff testified that she was taking two milligrams of Alprazolam

daily and that the medication's side effects negatively affected her memory and made her feel

sleepy "most of the time."  *Id.* at 38–39.  To counteract the side effects, she asserted that she relied

upon lists, notes, and alarms.  *Id.* at 39.  She cleaned her apartment weekly, was able to bathe

without reminders, and took her two-year-old daughter to and from daycare on weekdays using

---

[7] In determining whether "unskilled, sedentary, light, and medium jobs exist in the national economy" that a claimant can perform, a VE may rely on the Dictionary of Occupational Titles, 20 C.F.R. § 404.1566(d)(1), which "provides a brief description of occupations within the national economy and lists the capabilities that each occupation requires of a worker."  *Callahan v. Astrue*, 786 F. Supp. 2d 87, 90 (D.D.C. 2011).

public transportation.  *Id.* at 39–41, 48.  She stated that she would read "newscasts in her phone" and watch YouTube videos that were "uplift[ing]."  *Id.* at 40–41.  Plaintiff further testified that in jobs she found herself "at odds" with coworkers and customers and felt that she was "not capable" of working.  *Id.* at 43–44.  When asked about her most recent work experience—from November 2020 to January 2021—she explained that she stopped working because the job was seasonal and because of her "weak condition."  *Id.* at 36.  She continued to apply for jobs but had not been offered any.  *Id.* at 37.

Following Plaintiff's testimony, the ALJ posed a series of hypothetical questions to a vocational expert.  The ALJ first asked the vocational expert what jobs could be performed by an individual of the same age and education of the Plaintiff who had no exertional limits, but was limited to "simple routine tasks with occasional changes in the work setting," "occasional judgments or decision making," "no production rate pace of work" such as on an assembly line, and "occasional interaction with the general public, . . . coworkers and supervisors."  *Id.* at 49. The VE testified that there were jobs available to that hypothetical individual that existed in the national economy, including the unskilled jobs of "automobile detailer," "hospital cleaner," and "marker."[8]  *Id.*  When asked what would happen if the individual were able "to maintain attention and concentration for a two-hour period before requiring a 15-minute break" throughout the workday, the VE testified that all the jobs identified would remain available.  *Id.* at 49–50.

### C.    The ALJ's Decision

The ALJ issued his decision denying benefits on August 2, 2021.  *Id.* at 13.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

---

[8] The VE testified that each of those jobs had a "specific vocational preparation" rating, or "SVP," of 2.  ECF No. 7-2 at 49.  "[U]nskilled work corresponds to an SVP of 1–2."  SSR 00-4p, *Use of Vocational Exert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704, at *3 (SSA Dec. 4, 2000).

request for review on February 11, 2022.  *Id.* at 2.  Because all of Plaintiff's arguments relate to the ALJ's formulation of Plaintiff's RFC, the following recitation focuses on information relevant to that determination.

1.    Substantial Gainful Employment, Severe Impairments, and the Listings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her SSI application.  *Id.* at 19.  At step two, he found that Plaintiff had three impairments that should be classified as "severe" under the regulations:  depression, anxiety, and post-traumatic stress disorder.  *Id.*

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments in the Listings, either alone or in combination.  *Id.* at 19–21.  Specifically, he considered Listing 12.04 for depressive, bipolar, and related disorders and Listing 12.06 for anxiety and obsessive-compulsive disorders.  *Id.* at 19.  To satisfy the criteria for each of these listings, a claimant's mental impairments must result in "one extreme limitation or two marked limitations in a broad area of functioning."  *Id.*  An extreme limitation is defined as "the inability to function independently, appropriately, or effectively, and on a sustained basis," while a marked limitation is defined as "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."  *Id.*  The ALJ found that Plaintiff had moderate limitations in all the "Paragraph B" criteria: understanding, remembering, or applying new information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.  *Id.* at 19–20.  In reaching those conclusions, the ALJ relied primarily on the report of consultative psychological examiner James Arnold, Ph.D., who evaluated Plaintiff in August 2021, Plaintiff's self-reported activities, and the State agency

psychological consultants' reports from the initial determination denying benefits and on reconsideration.  *See id.*

As to understanding, remembering, or applying new information, the ALJ noted that, although Plaintiff reported difficulty in this area at her prior job, Dr. Arnold's evaluation revealed above average cognitive function and only mild impairment of recent and remote memory skills. *Id.* at 19; *see also* ECF No. 7-7 at 7.  Plaintiff herself reported "an ability to shop by computer, pay bills, count change, handle a savings account, use a checkbook/money orders, and follow written instructions well."  ECF No. 7-2 at 19; *see also* ECF No. 7-6 at 28, 30.   The ALJ also pointed out that the State agency consultant on reconsideration found that Plaintiff was moderately limited in this area.  ECF No. 7-2 at 20; *see also* ECF No. 7-3 at 31.

In interacting with others, the ALJ acknowledged Plaintiff's assertion that she got anxious in public and felt misunderstood by others but noted that she also reported spending time with her child, talking with friends in her neighborhood, and being respectful to authority figures.  ECF No. 7-2 at 20; *see also* ECF No. 7-6 at 25, 29–30.  Dr. Arnold also noted Plaintiff reported difficulty in getting along with others, but, on examination, found her cooperative with adequate social skills. ECF No. 7-2 at 20; *see also* ECF No. 7-7 at 4, 6.   Again, the State agency consultant on reconsideration found Plaintiff moderately limited in this area.  ECF No. 7-2 at 20; *see also* ECF No. 7-3 at 31.

Plaintiff also reported difficulties completing tasks and concentrating.  ECF No. 7-2 at 20; *see also* ECF No. 7-6 at 30.  However, the ALJ pointed out that she indicated she could "complete personal needs, prepare meals, and use public transportation" and that she engaged in activities such as journaling, researching, and organizing on a weekly basis.  ECF No. 7-2 at 20; *see also* ECF No. 7-6 at 29.  Dr. Arnold found that her thought processes were coherent and goal-directed

7

and her attention and concentration were intact.  ECF No. 7-2 at 20; *see also* ECF No. 7-7 at 6–7.
And the State agency consultant on reconsideration noted a moderate limitation in concentrating,
persisting or maintaining pace.  ECF No. 7-2 at 20; *see also* ECF No. 7-3 at 31.

Finally, in the domain of adapting and managing herself, Plaintiff reported that she "had
difficulty preparing herself for work and being presentable without help, reminders, and
encouragement from others."  ECF No. 7-2 at 20; *see also* ECF No. 7-6 at 25.  The ALJ stated,
however, that Plaintiff testified that "she stopped working because her seasonal job ended and not
due to work-related limitations."  ECF No. 7-2 at 20.  Dr. Arnold found that her sensorium was
clear; that she was oriented to person, place, and time; that her insight and judgment were good;
and, as noted above, that she had intact attention and concentration, mildly impaired memory, and
above average cognitive functioning.  *Id.*; *see also* ECF No. 7-7 at 6-7.  As above, too, the State
agency consultant on reconsideration assessed a moderate limitation in this area.  ECF No. 7-2 at
20; *see also* ECF No. 7-3 at 31.

2.      Plaintiff's RFC

At step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at
all exertional levels."  *Id.* at 21.  *Id.*  He found the following nonexertional limitations: Plaintiff
was "able to perform simple, routine tasks requiring no more than occasional changes in the work
setting; occasional judgment or decision making, with no production rate for pace of work such as
seen in assembly line work."  *Id.*  In addition, Plaintiff was "able to tolerate occasional interactions
with the general public, supervisors, and co-workers."  *Id.*

In determining that RFC, the ALJ first found that Plaintiff's medically determinable mental
impairments could reasonably be expected to cause her alleged symptoms of forgetfulness, poor
sleep, anxiety in public, and random panic that affected her ability to stand, walk, talk, remember,

complete tasks, concentrate, understand, follow instructions, and get along with others in work settings. *Id.* at 21–22. However, the ALJ found that Plaintiff's statements as to the "intensity, persistence and limiting effects of [those] symptoms" were "inconsistent with the medical evidence and other evidence in the record." *Id.* at 22. To explain this conclusion, the ALJ first addressed a consultative psychiatric evaluation and then considered the other evidence of record, including Plaintiff's own reports of her activities of daily living and past seasonal employment, as well as opinions from non-examining state agency psychological consultants. *Id.* at 22–23. As discussed further below, a January 5, 2021 report from Plaintiff's treating physician was not analyzed. *Id.* at 23.

The ALJ began with Dr. Arnold's August 2019 consultative psychological evaluation. *Id.* at 22; *see also* ECF No. 7-7 at 4–9. Dr. Arnold noted that Plaintiff reported she "would get tired and required breaks" and "had issues getting along with others," and that "her emotional struggles prevented a resumption of her employment." ECF No. 5-2 at 22; *see also* ECF No. 7-7 at 4. Plaintiff further reported that she had no history of psychiatric hospitalizations, had received some "outpatient mental health treatment for [two] months," and was prescribed Alprazolam. ECF No. 5-2 at 22; *see also* ECF No. 7-7 at 4–5. During his examination, Dr. Arnold noted that Plaintiff "was cooperative with adequate social skills despite tearfulness and emotion" and "appropriately dressed with good grooming and appropriate eye contact." ECF No. 5-2 at 22; *see also* ECF No. 7-7 at 6. In addition, while Plaintiff's "affect was anxious, depressed, agitated, irritable, and tense with a 'stressed' mood," "her sensorium was clear and she was oriented times three." ECF No. 5-2 at 22; *see also* ECF No 7-7 at 6. Dr. Arnold found that her "attention and concentration were intact" with "recent and remote memory skills [] only mildly impaired." ECF No. 5-2 at 22; *see also* ECF No. 7-7 at 7. Dr. Arnold also indicated that Plaintiff's "mental status evaluation was

inconsistent with her vocational and educational history, particularly regarding short-term memory and sequencing." ECF No. 5-2 at 22; *see also* ECF No. 7-7 at 7

The ALJ again noted that Plaintiff "testified that she stopped working because her seasonal job ended and not due to work-related limitations." ECF No. 5-2 at 22. He also mentioned Plaintiff's testimony that she provided care for her two-year-old daughter and highlighted that Plaintiff "reads and watches YouTube videos online, cooks, does laundry, organizes, and shops for groceries weekly." *Id.* The ALJ additionally noted Plaintiff used public transportation "to take her daughter to and from school" and that Plaintiff "has applied for jobs." *Id.*

The ALJ then analyzed the State agency psychological consultant's findings. The consultant found on initial review that Plaintiff had "moderate limitation" in her abilities to "understand, remember, or apply information" and "concentrate, persist, or maintain pace," and "mild limitation" in her abilities to "interact with others " and "adapt or manage [her]self." *Id.*; ECF No. 7-3 at 5. Upon reconsideration, the consultant found "moderate limitation" in all Paragraph B criteria, as noted above. ECF No. 7-2 at 22; ECF No. 7-3 at 31. The ALJ characterized the initial review opinion as "mostly persuasive" and the opinion upon reconsideration as "more persuasive" because it was "generally consistent with the medical evidence of record." ECF No. 7-2 at 22. The ALJ compared the State agency consultants' findings to those of Dr. Arnold, writing that Dr. Arnold "noted [Plaintiff] had no limitation understanding, remembering, or applying simple directions and instructions, using reason and judgment to make work-related decisions, maintaining personal hygiene and appropriate attire, and being aware of normal hazards and taking appropriate precautions." *Id.* at 23; *see also* ECF No. 7-7 at 8. However, Dr. Arnold found "mild limitations" in "sustaining an ordinary routine and regular attendance at work," as well as "moderate limitations" in "understanding, remembering, or

applying complex directions and instructions, interacting adequately with supervisors, co-workers, and the public, and sustaining concentration and performing a task at a constant pace." ECF No. 7-2 at 23; *see also* ECF No. 7-7 at 8. Lastly, the ALJ noted (as he failed to do in his earlier discussion of the medical opinion) that Dr. Arnold found "marked limitations" in Plaintiff's "ability to regulate emotions, control behavior, and maintain well-being." ECF No. 7-2 at 23; *see also* ECF No. 7-7 at 8. The ALJ found Dr. Arnold's opinion "generally persuasive" because it was supported by the findings of his psychological examination of Plaintiff and was "consistent with [Plaintiff's] daily activities," including her ability to "use a computer and smart phone, play[] video games, and use[] a navigation system." ECF No. 7-2 at 23.

The ALJ then noted that he provided no analysis of how he considered "inherently neither valuable nor persuasive evidence," which "includ[ed] an assessment by [Plaintiff's treating physician] "Dr. Williams[,] who did not provide a function-by-function analysis of [Plaintiff's] limitations." *Id.* The ALJ provided no other explanation for his omission of Dr. Williams' assessment. *Id.*

The ALJ concluded that "the totality of the evidence," which included "the objective findings, [Plaintiff's] course of treatment, and her activities of daily living," indicated to the ALJ that Plaintiff could perform simple, routine tasks with no more than occasional changes in the work setting; could perform occasional judgment or decision making; could not function at a production rate for pace of work, such as seen in assembly line work; and could not tolerate more than occasional interaction with the general public, supervisors, and co-workers. *Id.* at 21, 23.

### 3. Conclusion of the Five Step Sequential Inquiry

The ALJ next found that Plaintiff had no past relevant work. *Id.* at 23. Relying on the VE's hearing testimony, the ALJ determined that an individual with Plaintiff's RFC would be able

to perform the occupations of auto detailer, hospital cleaner, and marker. *Id.* at 24. Moreover, the ALJ further relied on the VE's responses to a "more limiting hypothetical" which included "a limitation addressing deficits in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace." *Id.* To review, that additional limitation assumed that the individual could maintain attention and concentration for only two-hours at a time before requiring a fifteen-minute break. *Id.* at 49–50. Because the VE testified that an individual with those additional limitations would still be able to perform work available in the national economy, the ALJ found in the alternative that Plaintiff would still not be disabled under the regulations if the RFC reflected such deficits in concentration and attention. *Id.* at 24.

## II.     LEGAL STANDARD

A federal district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards. *Id.*; *Butler*, 353 F.3d at 999.

"[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied. *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a scintilla [of evidence], but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d1151, 1160 (D.C. Cir 2002)). "The substantial evidence standard requires considerable deference to the decision rendered by the

ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment "concerning the credibility of the evidence with its own."  *Id.*; *see also Butler*, 353 F.3d at 999 (finding that the district court's role is not to reweigh the evidence but only to determine whether the ALJ's findings are "based on substantial evidence and a correct application of the law").  However, "this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts."  *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009); *see also Lane-Rauth*, 437 F. Supp. 2d at 65 ("[T]his standard of review 'calls for careful scrutiny of the entire record,' to determine whether the Commissioner, acting through the ALJ, 'has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits[.]'" (second alteration in original) (quoting *Butler*, 353 F.3d at 999)).  Moreover, the Court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017), or credit "post-hoc rationalization[s]" advanced by the parties, *Cooper v. Berryhill*, No. 16-cv-1671, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017).  *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court "must judge the propriety of [an agency's judgment] solely by the grounds invoked by the agency"); *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *Chenery*, 332 U.S. at 196).

## III.   DISCUSSION

As noted, Plaintiff's appeal rests entirely on the ALJ's assessment of Plaintiff's RFC.  First, Plaintiff asserts that the ALJ failed to explain how, if it all, the ALJ "factored the Plaintiff's markedly limited abilities to regulate emotions, control behavior, and maintain well-being into his

residual functional capacity assessment," based on the opinion of Dr. Arnold.  ECF No. 13-1 at 6.

Second, Plaintiff contends that the ALJ erred by "fail[ing] to properly evaluate the opinion of the

Plaintiff's treating physician, Dr. Shelley Williams" by not addressing her January 5, 2021 report,

"in any manner, on the basis that she did not provide a function-by-function assessment."  *Id.* at

6–7.  Third, Plaintiff contends that the ALJ improperly assessed the opinions of the State agency

consultants who evaluated Plaintiff's claims by failing to mention and include in the RFC their

limiting findings that Plaintiff "retained the ability to understand, remember, and carry out short

and simple instructions," despite finding their opinions "persuasive."  *Id.* at 9.  Below, the Court

addresses each claim of error in turn, finding that the ALJ's failure to explain how he resolved the

conflict between Dr. Arnold's opinion as to Plaintiff's limitations in regulating emotions,

controlling behavior, and maintaining well-being, other evidence in the record, and his RFC

requires remand.  The Court further finds that, on remand, the ALJ should also correct an error in

his treatment of Dr. Williams' assessment but finds no error in the ALJ's treatment of the State

agency consultants' reports that would merit remand.

> **A.**     **Dr. Arnold's Assessment of Plaintiff's "Marked" Limitation in Ability to Regulate Emotions, Control Behavior, and Maintain Well-Being**

Recall that the ALJ found Plaintiff to be moderately limited in all four broad areas of mental

functioning, including in "adapting or managing oneself."  ECF No. 7-2 at 20.  In so finding, he

relied on Dr. Arnold's 2019 consultative psychological evaluation, noting that Dr. Arnold reported

that Plaintiff's "sensorium was clear and she was oriented times three.  Attention and concentration

were intact, and recent and remote memory skills were only mildly impaired.  Cognitive

functioning was above average, and insight and judgment were good."  *Id.* (internal citations to

the record omitted); *see also* ECF No. 7-7 at 4–10.  The ALJ also cited the State agency

consultant's determination on reconsideration that Plaintiff had "moderate limitation in th[e]

14

domain [of adapting and managing oneself]" as support for his finding.  ECF No. 7-2 at 20; *see also* ECF No. 7-3 at 32, 54.  Recall, too, that in formulating Plaintiff's RFC, the ALJ relied primarily on the same medical evidence, finding the State agency psychological consultant's determination on reconsideration persuasive largely because it was consistent with Dr. Arnold's psychological evaluation report.  *See* ECF No. 7-2 at 22–23.  The ALJ also found Dr. Arnold's medical opinion persuasive because it was consistent with other evidence in the record and supported by Dr. Arnold's own findings upon his examination of Plaintiff.[9]  However, in this section of the decision, the ALJ mentioned, without further comment, that Dr. Arnold had assessed Plaintiff with "marked limitations in the ability to regulate emotions, control behavior, and maintain well-being"—abilities included within the domain of adapting and managing oneself. ECF No. 7-2 at 23; *see also* ECF No. 7-7 at 8; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. Put another way, there is a significant inconsistency between, on the one hand, the ALJ's and the State agency consultant's assessment of Plaintiff's limitations in this domain and, on the other, Dr. Arnold's assessment—an opinion which, again, the ALJ found persuasive.

There also appears to be an inconsistency between Dr. Arnold's opinion and the RFC the ALJ formulated.  According to the regulations, individuals with problems regulating emotions, controlling behavior, and maintaining well-being will have difficulties "[r]esponding to demands; adapting to changes; managing . . . psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans . . . independently . . . ;  maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. As to severity of those difficulties, a marked limitation means

---

[9] Unlike with the January 5, 2021 assessment by Dr. Williams, discussed below, all parties agree that Dr. Arnold's assessment of Plaintiff's limitations constitutes a "medical opinion" under the operative regulations.

a claimant's "functioning in [a particular] area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00F.2.d.  Someone with a moderate limitation has a "fair" ability to function in that area.  *Id.* § 12.00F.2.c.  Here, having determined that Plaintiff had a moderate limitation in the domain of adapting and managing herself, the ALJ limited her to "occasional changes in the work setting," and "occasional judgment or decision making."  *See* ECF No. 7-2 at 21.  But the ALJ did not explain how his finding of a moderate limitation and formulation of those restrictions was consistent with Dr. Arnold's opinion that Plaintiff had a marked limitation in that domain, or, alternatively, why he discounted that opinion.

It is well established that "[i]n performing the RFC assessment, the ALJ must explain how he considered and resolved any 'material inconsistencies or ambiguities' evident in the record, as well as the reasons for rejecting medical opinions in conflict with the ultimate RFC determination."  *Butler*, 353 F.3d at 1000 (D.C. Cir. 2004) (quoting Social Security Ruling ("SSR") 96–8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).  The ALJ failed to do so here.  Inexplicably, he asserted that Dr. Arnold found marked limitations Plaintiff's ability to regulate emotions, control behavior, and maintain well-being and, in the three following sentences, found the opinion persuasive because it is "supported by the findings herein by Dr. Arnold himself upon examination of the claimant" and "consistent with the claimant's daily activities," which include "us[ing] a computer and smart phone, play[ing] video games, and us[ing] a navigation system."  ECF No. 7-2 at 23.  That is, he appears to simply ignore the part of Dr. Arnold's *persuasive* opinion in which he stated that Plaintiff has marked limitations in adapting and managing herself.   Of course,

> even if an ALJ finds a medical opinion persuasive, the ALJ is not obligated to accept every part of the opinion.  Indeed, an ALJ may implicitly reject part of an opinion by choosing not to incorporate the opined limitations. However, when

rejecting certain limitations or choosing to find an opinion persuasive or not, . . . ALJ[s] must explain their reasoning.

*Patricia T. v. Kijakazi*, No. 21-cv-1028, 2022 WL 3583634, at *11 (D.D.C. Aug. 22, 2022) (internal citations omitted) (collecting cases).

The Commissioner contends that "[t]he ALJ discounted the marked limitation when he explained that Plaintiff's job did not end due to her emotional or mental health problems, but rather because Plaintiff's employment was seasonal"; she also notes that Plaintiff "actively look[ed] for employment during a period of alleged disability." ECF No. 15 at 18 (emphasis omitted). Not so. As the Court just explained, the ALJ offers *no* rationale for how he treats (or, better, fails to treat) this part of Dr. Arnold's opinion. The ALJ does mention, twice, that Plaintiff "testified that she stopped working because her seasonal job ended and not due to work-related limitations"[10] and once that she "has applied for jobs."[11] ECF No. 7-2 at 20, 22. But he does not relate that testimony to Dr. Arnold's assessment of Plaintiff's marked limitations in adapting and managing herself. And a marked limitation in this domain, which includes the ability to adapt to changes in the work setting, might exclude her from even the unskilled jobs the VE noted. *See* SSR 96-9, *Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work*, 1996 WL 374185, at *9 (S.S.A. July 2, 1996) (noting that unskilled work requires "[d]ealing with changes in a routine work setting"). Without any analysis of this

---

[10] That is not entirely accurate. As noted, Plaintiff testified that her most recent job was seasonal and also that she stopped working because of her "weak condition." ECF No. 7-2 at 36.

[11] The Commissioner cites *Page v. Colvin* for the proposition that the ALJ was permitted to take into account the fact that Plaintiff sought work in discounting Dr. Arnold's opinion as to her abilities to adapt and manage herself. *See* ECF No. 15 at 18. As noted in the text, there is no indication that the ALJ relied on that testimony in analyzing that opinion. Nor, indeed, did the court in *Page* mention the plaintiff's job hunting when weighing medical opinions. Rather, the court noted that the plaintiff testified that he stopped work in May 2013 but that treatment notes from May and June 2013 reported that he was looking for work; that was one of many inconsistencies that the ALJ used to evaluate the plaintiff's credibility. *See Page v. Colvin*, No. 15-cv-833, 2016 WL 9456343, at *17–18 (D.D.C. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 9455316 (D.D.C. Mar. 4, 2016).

marked limitation or reconciliation of the contrary evidence from the State agency consultants, it is unclear how, if at all, the ALJ factored the marked limitation into Plaintiff's RFC, or whether he discounted it.  This was error—and error that requires remand:

> [A]n ALJ cannot merely disregard evidence which does not support [his or her] conclusion.  A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail . . . to explain sufficiently the weight . . . given to certain probative items of evidence.

*Grant v. Kijakazi*, 619 F. Supp 3d 128, 139 (D.D.C. 2022) (first and third alterations in original) (quoting *Turner v. Astrue*, 710 F. Supp. 2d 95, 105 (D.D.C. 2010)); *see also, e.g.*, *Johnson v. Kijakazi*, No. 19-cv-2, 2022 WL 218561, at *9 (D.D.C. Jan. 25, 2022) ("[T]he ALJ—and not a reviewing court—must explain his reasons for . . . resolving 'contradictory evidence' in a certain way."); *Revere v. Berryhill*, No. 17-cv-774, 2019 WL 99303, at *9 (E.D. Va. Jan. 3, 2019) ("This Court will not serve as fact-finder and resolve *sua sponte* the conflicting evidence presented . . . — that job belongs to the ALJ, who must show his work.").  Without further explanation of the ALJ's treatment of Dr. Arnold's finding of marked limitations in this domain, "the Court cannot be certain that the ALJ's failure to explain his reasons was harmless."[12]  *Johnson*, 2022 WL 218561, at *9; *see also, e.g.*, *Grant*, 619 F. Supp. 3d at 140 (remanding the case where "the ALJ did not 'provide a sufficient basis for [the court] to understand [her] reasoning when viewing the decision as a whole.'" (second alteration in original) (quoting *Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218, at *11 (D.D.C. Mar. 20, 2022))).

### B.     The ALJ's Treatment of Dr. Williams' Assessment

Plaintiff also argues that the ALJ did not properly treat the June 5, 2021 "medical opinion" of Dr. Williams.  ECF No. 13-1 at 6–9.  Plaintiff is incorrect when he argues that the assessment includes "medical opinions" as that term is defined in the current regulations.  *See id.* at 8.

---

[12] The Commissioner does not argue that if there was error here (which, as noted, she denies) the error was harmless.

However, the ALJ did err by characterizing the record as "inherently neither valuable nor persuasive evidence." ECF No. 7-2 at 23. He should correct that error on remand.

The record at issue is a District of Columbia disability form filled out by Dr. Williams, Plaintiff's treating psychiatrist. *See* ECF No. 7-7 at 12–14; *see also* ECF No. 7-2 at 38 (asserting that Plaintiff has been a patient of Dr. Williams since 2018 and she "is the only doctor" Plaintiff sees for her mental health issues). The record states that Plaintiff was diagnosed with "anxiety, adjustment disorder" with an onset date of 2017. ECF No. 7-7 at 12. It notes among other things that Plaintiff's appearance is "unke[m]pt"; her behavior and psychomotor activity is "introverted"; her speech is "slow"; her affect is "flat"; she has "flight of ideas"; her concentration is "difficult" and she "cannot complete tasks"; her remote memory is "good" but her recent memory is characterized by "easily forget[ting] things recently said in a conversation"; and her prognosis is "poor" and "symptoms are worsening." *Id.* at 12–13. When asked to describe the effect of these mental status findings on Plaintiff's "physical and/or mental ability to perform work-related activities," Dr. Williams filled in the blank with these words: "Can't concentrate/focus, Poor 'people skills.'" *Id.* at 14. As noted, the ALJ stated, "I have not provided any analysis about how inherently neither valuable nor persuasive evidence was considered, including an assessment by Dr. Williams who did not provide a function-by-function analysis of the claimant's limitations." ECF No. 7-2 at 23.

Plaintiff argues that the report constitutes a "medical opinion" under the operative regulations and that, therefore, the ALJ could not reject it merely on the basis that it did not contain a "function-by-function analysis," which is not a requirement for medical opinions. *See* ECF No. 13-1 at 7–9; *see also* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion"). She further faults the ALJ for failing to assess whether the (purported) medical opinion was supported by objective

medical evidence and the physician's explanations and consistent with the other evidence in the record, as required by 20 C.F.R. § 404.1520c(b)(2).  *See* ECF No. 13-1 at 6–7.  The Commissioner counters that Dr. Williams' assessment is not a "medical opinion" as defined by the regulations but, rather should be characterized as "other medical evidence," and that, therefore, the ALJ's treatment of it was acceptable.  ECF No. 15 at 20–22; *see also* 20 C.F.R. § 404.1513(a)(3) (defining "other medical evidence").  She further contends that even if the ALJ's failure to evaluate the report was error, it was harmless.  *See* ECF No. 15 at 22–23.  As noted, the Court finds that the ALJ's treatment of Dr. Williams' assessment was error, although not for the reasons urged by Plaintiff.

Under the regulations applicable to claims that, like this one, were filed after March 27, 2017, a medical opinion "is a statement from a medical source about what [a claimant] can still do despite [a claimant's] impairment(s) and whether [claimant has] one or more impairment-related limitations or restrictions" in several listed abilities, including the "ability to perform the mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 404.1513(a)(2).  On the other hand, evidence from a medical source that is neither objective medical evidence (like medical signs and laboratory findings) or medical opinion is denoted "[o]ther medical evidence."  *Id.* § 404.1513(a)(3).  That category includes "judgments about the nature and severity of [a claimant's] impairments, [as well as] . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  *Id.*

When faced with medical opinions, ALJs must explain how they considered "the supportability and consistency factors for a medical source's medical opinions" in their decisions,

since they are "the most important factors" considered in determining the persuasiveness of a medical opinion's findings.  20 C.F.R. § 404.1520c.[13]  The same is not true of "other medical evidence."  Although the ALJ must "assess and make a finding about [a claimant's] residual functional capacity based on all the relevant medical and other evidence in [the] case record," 20 C.F.R. § 404.1520(e), there is no requirement that a discussion of other medical evidence "consider the 'medical opinion' factors," *T.E. v. Comm'r, Soc. Sec. Admin.*, No. 21-cv-2274, 2023 WL 2661615, at *3 (D. Colo. Mar. 28, 2023).

The D.C. Circuit has not yet weighed in on what constitutes a medical opinion under the 2017 regulations.  However, significant authority indicates that to qualify as a medical opinion, a medical source's assessment must make explicit the work-related activities the individual can do despite her impairments and/or the specific limitations or restrictions in areas such as her ability

---

[13] Prior to the revision of the regulations effective on March 27, 2017, an opinion from a claimant's treating physician was entitled to controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  The D.C. Circuit had "a 'treating physician rule' of [its] own," which similarly required the fact-finder to give a treating physician's opinion controlling weight "unless contradicted by substantial evidence." *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004) (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). The new regulations, which state that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources," 20 C.F.R. § 404.1520c(a), are thus inconsistent with that existing D.C. Circuit precedent.

In *National Cable & Telecommunications Association v. Brand X Internet Services*, the Supreme Court held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to . . . deference [under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984)] only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. 967, 982 (2005).  The D.C. Circuit has not yet evaluated whether its treating physician rule survived the revision of the Social Security regulations.  However, relying on the analysis in *Brand X*, two other Circuits have recently held that prior precedent that is inconsistent with the new Social Security regulations does not trump the new rules.  *See Rogers v. Kijakazi*, 62 F.4th 872, 877–80 (4th Cir. 2023); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  Indeed, *Harner* held that Eleventh Circuit precedents "establishing and applying the treating-physician rule" were no longer good law.  *Id.* at 896; *accord Glasby v. Soc. Sec. Admin., Comm'r*, No. 21-12093, 2022 WL 1214015, at *3 (11th Cir. Apr. 25, 2022).  This Court, like a number of other district courts, agrees that the new regulations are binding upon it and abrogate prior inconsistent precedent like the D.C. Circuit's own treating physician rule.  *See, e.g.*, *Sandoval v. Kijakazi*, No. 21-cv-471, 2023 WL 4231007, at *5 n.7 (D.N.M. June 28, 2023); *C.D.I. v. Comm'r, Soc. Sec. Admin*, No. 22-cv-629, 2023 WL 2242505, at *4–5 (D. Colo. Feb. 27, 2023), *appeal docketed*, No. 23-1139 (10th Cir. Apr. 28, 2023); *Miser v. Kijakazi*, No. 21-cv-977, 2023 WL 336162, at *3 n.2 (E.D. Ark. Jan 20, 2023); *Alexis R. v. Kijakazi*, No. 21-cv-162, 2022 WL 4298361, at *7 (D. Conn. Sept. 19, 2022) (collecting cases); *Trogdon v. Comm'r of Soc. Sec.*, No. 21-cv-387, 2022 WL 2954090, at *6 (E.D. Cal. July 26, 2022), *appeal docketed*, No. 22-16461 (9th Cir. Sept. 26, 2022).

to perform the physical or mental demands of work-related activities caused by those impairments. Indeed, the SSA has stated that the purpose of the revisions was to provide a "narrower definition of medical opinions" that includes only statements from medical sources that "describe a claimant's functional abilities and limitations."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560-01, 62562 (Sept. 9, 2016) (to be codified at 20 C.F.R. pts. 404, 416).  Put another way, a medical opinion "describe[s] what [a claimant] can or cannot do during the workday.  The term . . . cannot be understood to encompass every piece of information that describes 'what [a claimant] can still do' only after manipulation and interpretation with supplemental evidence." *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *3 (6th Cir. Nov. 22, 2022) (third alteration in original) (quoting 20 C.F.R. § 404.1513(a)(2)).  For example, a report stating that the plaintiff's impairment caused him to have poor understanding, memory, sustained concentration and persistence, social interaction, and adaptation was not considered a medical opinion because it did not address the plaintiff's "specific work-related impairments or what he could still do despite his limitations." *Pharries v. Kijakazi*, No. 22-cv-750, 2023 WL 3690253, at *5–6 (W.D. Okla. May 26, 2023).  Similarly, reports from a physician of the plaintiff's declining memory and attention and difficulty "meet[ing] everyday stress and responsibility" did not constitute medical opinions because they were devoid of "any statements about [the plaintiff's] ability to perform physical, mental, and other demands of work activities with specificity that would allow the ALJ insight into the extent to which [the plaintiff's] mental impairments hinder[ed] her ability to perform those activities."  *Angela W. v. Kijakazi*, No. 21-cv-550, 2022 WL 17585786, at *5–6 (E.D. Va. Dec. 12, 2022).  Thus, it is not enough for a medical source to identify physical or mental status findings that indicate (or even necessitate) limitations in work-related functions; those functional limitations must be explicitly and specifically spelled

out.  *See, e.g.*, *Michael H. v. Kijakazi*, No. 20-cv-417, 2021 WL 2358257, at \*4 (N.D.N.Y. June 9, 2021) (treating the report of a consultative psychological evaluation as a medical record where it noted that the plaintiff "had no limitations in most categories of mental function, except for mild limitations interacting with others, concentrating, working at a consistent pace, regulating emotions, and controlling his behavior").

Under the new regulations, then, Dr. Williams' report does not qualify as a medical opinion.   Plaintiff points to the physician's assessments that Plaintiff had "difficul[ty]" concentrating, "cannot complete tasks," and had "[p]oor 'people skills,'" asserting that those are "statement[s] about what [Plaintiff] can still do despite her impairments, or whether [she] has one or more impairment-related limitations or restrictions in the ability to perform the mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace."  ECF No. 7-7 at 13–14; ECF No. 18 at 7.  But those symptoms identify neither the work-related functions Plaintiff can perform nor the specific limitations or restrictions in work-related functions she has.  Dr. Williams' assessment is, therefore, properly categorized as "other medical evidence."   As such, the ALJ "was under no obligation to assess [its] persuasiveness" in his opinion.  *Robinson*, 2022 WL 17168444, at \*3.

Nevertheless, the ALJ was still required to consider the medical record, and that's where his analysis gets into trouble.  Recall that the ALJ characterized Dr. Williams' assessment as "inherently neither valuable nor persuasive evidence," explaining that it "did not provide a function-by-function analysis."   ECF No. 7-2 at 23.  Read generously, the assertion that the assessment did not include a function-by-function analysis can be interpreted as the ALJ's finding that it is not a "medical opinion" under the regulations.   After all, as discussed above, the regulations now require such opinions to "describe a claimant's functional abilities and

limitations."[14]   Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. at 62562.  But just because it is not a medical record does not mean it is "inherently neither valuable nor persuasive."   The regulations delineate "[e]vidence that is inherently neither valuable nor persuasive" as comprising (1) "[d]ecisions by other governmental agencies and nongovernmental entities"; (2) "[f]indings made by a State agency disability examiner . . . at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [a claimant is] disabled"; and (3) "[s]tatements on issues reserved to the Commissioner," such as statements that a claimant is or is not disabled, that an impairment is severe, that an impairment meets a Listing, or that a claimant can perform work at functional exertional levels using SSA's "programmatic terms" (i.e. sedentary, light, medium, heavy, or very heavy work).   20 C.F.R. § 404.1520b(c).  The record at issue does not fit into that category.  As such, "it *cannot* be dismissed as inherently less persuasive than other evidence."   *Cousino v. Comm'r of Soc. Sec.*, No. 22-cv-1712, 2023 WL 3629809, at *12 (N.D. Ohio May 4, 2023), *report and recommendation adopted*, 2023 WL 3620793 (N.D. Ohio May 24, 2023).

The Commissioner argues that that "any error in not evaluating Dr. Williams' statement was harmless" because (1) the ALJ's RFC included a limitation to only occasional interaction with others, which accounts for Plaintiff's "[p]oor 'people skills'" and (2) the ALJ found that, even if Plaintiff required fifteen-minute breaks every two hours to account for her problems in concentration and attention, there were still jobs Plaintiff could perform.  *See* ECF No. 15 at 22–23; ECF No. 7-7 at 13–14; *see also* ECF No. 7-2 at 24 ("Accordingly, assuming arguendo that the

---

[14] To the extent the ALJ believed that a medical opinion must explicitly address each mental and/or physical work-related function, the Court does not read the regulations as requiring that.  Indeed, the requirement of a "function-by-function" analysis is generally understood to apply to ALJs rather than medical sources, *see* SSR 96-8p, 1996 WL 374184, at *1, and even then there is no mandate that the ALJ must address in writing each and every work-related function.  *See, e.g.*, *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008).

claimant had a more restrictive residual functional capacity, jobs would still remain available.  I therefore find, in the alternative, that if the claimant had a more restrictive residual functional capacity that included these additional limitations, the other findings set forth herein, including my ultimate finding of nondisability, would remain.").  She may well be correct on the record as it currently stands.  *But see Jamie G. v. Comm'r of Soc. Sec.*, No. C22-5201, 2022 WL 16947845, at *4 (W.D. Wash. Nov. 15, 2022) (remanding the case where a mischaracterization of evidence as inherently neither valuable nor persuasive left the court "uncertain whether the ALJ considered the evidence and declined to explicitly assess it, or whether the ALJ refused to consider the evidence at all based on a mistaken understanding of the governing regulations"); *Roegner v. Comm'r of Soc. Sec.*, No. 20-cv-01974, 2022 WL 1078906, at *6 (D. Ariz. Apr. 11, 2022) (similar).  The Court need not make that decision because the case will be remanded on other grounds.  *See Cobb v. Astrue*, 770 F. Supp. 2d 165, 170 (D.D.C. 2011) (refraining from determining whether an error was harmless or prejudicial where the case was remanded on other grounds); *see also, e.g.*, *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008) ("In light of our determination [to remand the case on other grounds] we need not address whether the ALJ's [additional] error . . . is harmless."); *Price v. Astrue*, 572 F. Supp. 2d 703, 713 (E.D. Tex. 2008) ("The court need not consider whether this [error] resulted in any prejudice to [the plaintiff] because the ALJ's error can be corrected as part of the remand[.]").  However, on remand, the ALJ should correct his erroneous treatment of Dr. Williams' January 5, 2021 report as "inherently neither valuable nor persuasive."

### C.    The State Agency Psychological Consultants' Assessments of Plaintiff's Ability to Understand, Remember, and Carry Out Instructions

The State agency consultants, on both the initial determination and on reconsideration, found that Plaintiff's ability to understand, remember, and carry out very short and simple instructions was not significantly limited and that her ability to understand, remember, and carry

out detailed instructions was moderately limited.  ECF No. 7-3 at 7–8, 18, 35–36, 39–40, 58–59,

62–63.   Plaintiff contends that the ALJ erred when he did not mention the State agency

consultants' limitation to understanding, remembering, and carrying out short and simple

instructions, and did not include any such limitation explicitly in the RFC.  ECF No. 13-1 at 9–10.

An ALJ is not required to "refer to every piece of evidence in his decision if he indicated

'what evidence was credited, [and] also whether other evidence was rejected rather than simply

ignored.'"  *Oxner v. Kijakazi*, No. 20-cv-3066, 2022 WL 17370199, at *9 (D.D.C. Aug. 5, 2022)

(quoting *Butler*, 353 F.3d at 1002).  However, the ALJ must "build an 'accurate and logical bridge

from the evidence to [his] conclusion.'"  *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Scott v.

Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).  Here, it is true that the ALJ did not mention the

State agency consultants' findings regarding Plaintiff's abilities to understand, remember and carry

out either short and simple instructions or detailed instructions.  However, he did note—and

apparently found persuasive—Dr Arnold's identical findings.  *See* ECF No. 7-2 at 23 (noting that

Dr. Arnold found "no limitation understanding, remembering, or applying simple directions and

instructions" and "moderate limitations understanding, remembering, or applying complex

directions or instructions" and finding the medical opinion "generally persuasive").  The mere

failure to mention that the State agency consultants also had the same opinion of Plaintiff's

limitations in this area was harmless error, if it was error at all.  *See Atwood v. Astrue*. 742 F. Supp.

2d 1146, 1155 (D. Or. 2010) ("After reviewing the records, this court finds that Dr. Krueger's

report is nearly identical to Dr Turner's diagnosis and observations of plaintiff. . . .  If any error

existed due to the ALJ's failure to discuss Dr. Turner's opinion, it was harmless error.").   More,

the RFC limited Plaintiff to "simple, routine tasks," and the only jobs the VE identified that a

person with Plaintiff's RFC could perform were unskilled.  *See* ECF No. 7-2 at 21, 24, 49; *see also*

note 8, *supra*.  Courts have found that such restrictions can account for a plaintiff's limitation to understanding, remembering, and carrying out only simple instructions.  *See, e.g.*, *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making simple work-related decisions[.]" (alteration in original)); *Corbitt v. Kijakazi*, No. 20-cv-771, 2023 WL 2703996, at *8 (M.D. Ala. Mar. 9, 2023) (recognizing that unskilled work requires understanding, remembering, and carrying out simple instructions); *Gaydosh v. Comm'r of Soc. Sec.*, No. 19-cv-220, 2020 WL 5084016, at *1 n.1 (W.D. Pa. Aug. 26, 2020) ("[T]he ability to understand, remember and carry out simple job instructions is part of the very definition of unskilled work that included jobs that Plaintiff was adjudged able to perform."); *see also* SSR 85-15, *The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work includes the abilities (on a sustained basis) to understand, carry out, and remember simple instructions[.]").  Plaintiff makes no attempt to explain how that limitation fails to account for her moderate limitations in understanding, remembering, and carrying out detailed instructions.  Therefore, the Court finds no error requiring remand here.

## IV.    REMEDY

Plaintiff asks Court to reverse the ALJ's judgment as contrary to law and unsupported by substantial evidence and remand for an award of benefits, but he mounts no serious argument in support of his desired remedy. ECF No. 13-1 at 1.  A court may reverse the Commissioner's decision finding the claimant is not disabled and order a remand for calculation of benefits "[i]f 'the evidence on the record as a whole is clearly indicative of disability and additional hearings would serve no purpose other than to delay [their] inevitable receipt[.]'" *Price v. Berryhill*, No.

16-cv-2469, 2018 WL 4381098, at *9 (D.D.C. Feb. 14, 2018) (quoting *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 35–36 (D.D.C. 2013)), *report and recommendation adopted*, No. 16-cv-2469, 2018 WL 4381060 (D.D.C. Mar. 5, 2018). In this case, the ALJ's opinion contained certain errors. However, the evidence in the record does not clearly indicate that Plaintiff has a disability and thus warrant a reversal. Rather, the ALJ should be permitted an opportunity to address the deficiencies in his decision. *See Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882, at *20 (D.D.C. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 12251883 (D.D.C. Oct. 22, 2019).

## CONCLUSION

For the reasons stated above, the Court will enter an Order **DENYING** Defendant's motion for judgment of affirmance (ECF No. 15), **GRANTING IN PART** Plaintiff's motion for judgment of reversal (ECF No. 13) to the extent that it seeks remand to the Social Security Administration for further administrative proceedings, **DENYING IN PART** Plaintiff's motion to the extent that it seeks reversal, and **REMANDING** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.


Date: July 31, 2023                    _____
                                       G. MICHAEL HARVEY
                                       UNITED STATES MAGISTRATE JUDGE